IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL WERNER, | ) | |
| | ) | Civil Action No. 16 – 1863 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| CHRISTINA SORBIN, *et al.* | ) | |
| | ) | ECF No. 18 |
| Defendants. | ) | |

## MEMORANDUM OPINION

Pending before the Court is a Motion for Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies that was filed by the Defendants on March 27, 2017. (ECF No. 18.) Plaintiff responded in opposition to the Defendant's Motion on June 6, 2017 (ECF No. 40), and Defendants filed a reply in response to his opposition on June 7, 2017 (ECF No. 46). For the following reasons, the Motion will be granted.

### A. BACKGROUND

Plaintiff, who is proceeding *pro se*, is currently in the custody of the Pennsylvania Department of Corrections and confined at SCI-Waymart. He initiated this action on December 15, 2016 with the filing of a Motion for Leave to Proceed *in forma pauperis* and a prisoner civil rights Complaint alleging that Defendants failed to protect him from an assault by another inmate. (ECF Nos. 1, 1-1.) His Motion was granted (ECF No. 2) and his Complaint was docketed on December 16, 2016 (ECF No. 3). Defendants requested and were granted leave to file a Motion for Summary Judgment solely on the issue of exhaustion of administrative remedies. (ECF Nos. 15, 16.) Said Motion was filed on March 27, 2017, along with a Brief in Support thereof, a Concise Statement of Material Facts and an Appendix. (ECF Nos. 18-21.)

Plaintiff responded by filing a Brief in Opposition to the Motion on June 6, 2017, along with a Counter Statement of Facts and an Appendix. (ECF Nos. 40-42.) Defendants then filed a Response to Plaintiff's Counter Statement of Facts on June 7, 2017. (ECF No. 46.) The Motion is now ripe for review.

### B. FACTUAL ALLEGATIONS

The incident upon which Plaintiff's Complaint is based happened when Plaintiff was an inmate at SCI-Pittsburgh. Plaintiff alleges that was constantly being threatened with rape and death by an inmate named Juan Gonzalez. On July 16, 2016, he told Defendants Burke, Taylor, Robinson and Scott that he was in fear and felt threatened by Gonzalez. (ECF No. 3, ¶¶ 1-3.) These Defendants instructed Plaintiff to speak with the unit psychologist, Defendant Stroupp. Id., ¶ 3. Plaintiff then spoke with Defendant Stroupp who assured Plaintiff that she knew Gonzalez to never act on his threats but nonetheless told Plaintiff that she would make sure that staff kept a close eye on the situation. Id., ¶ 4.

On July 18, 2016, Plaintiff was laying on his bunk in his cell when around 1:15 p.m., Gonzalez ran into his cell and threw a television at Plaintiff, which missed him and smashed into the wall. Id., ¶ 5. Plaintiff attempted to flee from his cell but tripped over his rug and then Gonzalez jumped on Plaintiff and started to punch him repeatedly in the back of the head. Id. Plaintiff screamed for help but no officer was on the unit to stop the situation. Id., ¶ 6. Gonzalez then wrapped his arms around Plaintiff's necks and choked him until Plaintiff lost consciousness. Id., ¶ 7. Plaintiff states that he is unaware of what happened next but relies on several witnesses who told him that Gonzalez bashed his head on the ground multiple times until Plaintiff was knocked-out and then pulled out his penis and attempted to rape him. Id., ¶ 8. While Gonzalez was attempting to pull down Plaintiff's pants, another inmate by the name of Manuel Rodriguez

pulled him off of Plaintiff. Id., ¶ 9. Gonzalez once again wrapped his arms around Plaintiff's neck while yelling "Die, Die, Die!" Id. Plaintiff was told by the witnesses that he was unconscious for about ten minutes and when he came to he was barely able to speak. Id., ¶ 10. Both Plaintiff and Gonzalez were taken to the Restricted Housing Unit following the incident where Plaintiff claims to have fainted twice but was never taken to medical to get checked out. Id., ¶¶ 14-15. He also claims to have had three seizures in the first three days after the attack and urinated blood. Id., ¶ 15. He asked the nurses delivering medication for medical help but was told to put in a sick call slip. Id., ¶ 16. He claims to have done so but never received a reply nor was he ever seen by a doctor or nurse. Id.

Plaintiff claims that as a result of the attack he now suffers from headaches, dizziness, blurred vision, flashbacks and night terrors. Id., ¶ 13. He states that he has never received any help for any of these symptoms. Id. He admits that he has several mental health illnesses and believes that is why Defendant Stroupp did not take him seriously. Id., ¶ 11.

While Plaintiff also names Sorbin (Unit Manager), Capozza (Superintendent of SCI-Pittsburgh) and Wood (CHCA) as Defendants, there are no allegations directed at these individuals in his Complaint. It appears that Plaintiff names them as Defendants solely based on their supervisory roles in the prison.

C. **DISCUSSION**

1. **Exhaustion of Administrative Remedies**

Defendants move for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies prior to initiating this action. Through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress amended 42 U.S.C. § 1997e(a), prohibits prisoners from bringing an action with respect to prison conditions pursuant

3

to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides in pertinent part as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See* Booth v. Churner, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See* Porter v. Nussle, 524 U.S. 516, 532 (2002).

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83; *see also* Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See, e.g.*, Booth v. Churner, 206 F.3d 289 (3d Cir. 2000);

Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

Within DC-ADM 804, the Inmate Grievance System Policy, the Pennsylvania Department of Corrections established a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See* Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, No. 08-23, 2010 U.S. Dist. LEXIS 127124, at *21-25 (M.D. Pa. Dec. 1, 2010) (same).

**2. Plaintiff's Failure to Exhaust his Administrative Remedies**

In support of their Motion for Summary Judgment, Defendants note that Plaintiff did not appeal to final review any of the six grievances that he filed in 2016, when the alleged inmate assault occurred in this case, and, therefore, he did not properly exhaust his administrative remedies. (ECF No. 21.) Plaintiff, on the other hand, states that he did file a grievance about the assault, which included his claim that the corrections officers were nowhere on the block when

5

the assault occurred.  This grievance, Grievance No. 636527, which was provided to the Court by the Defendants, was filed on July 28, 2017, and received by the Superintendent's Assistance on August 1, 2017.  (ECF No. 46-1, p.3.)  Plaintiff maintains that he never received a response to this grievance (ECF No. 42, p.4 ¶ 10), and in support of his position he provided the Court with an Inmate Request to Staff Member slip dated October 12, 2016, wherein he asked the Grievance Coordinator, Carol Scire, for a response to Grievance No. 636527.  (ECF No. 42, p.16.)  He claims that Carol Scire did not respond to that slip or his grievance (ECF No. 42, p.4 ¶ 12), so he decided to file another grievance, Grievance No. 650480, recounting the same events as those he grieved in Grievance No. 636527 (ECF No. 46-2, p.3).  In Grievance No. 650480, also provided to the Court by the Defendants, he states that he will be filing a lawsuit and that he "will not sign off" no matter the response he receives.  (ECF No. 46-2, p.3.)  Plaintiff states that he never received a response to Grievance No. 650480 either (ECF No. 42, p.4 ¶ 14), and so on November 17, 2016, he sent another Inmate Request to Staff Member slip to Carol Scire asking for responses to both grievances (ECF No. 42, p.18).  Plaintiff states that he did not receive a response to either of his requests to Carol Scire or to either of his grievances.  (ECF No. 42, p.4 ¶ 15.)  Therefore, he maintains that he could not appeal either of his grievances to final review.  (ECF No. 42, p.4 ¶ 18.)

      Failure to exhaust is an affirmative defense that the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff.  Jones v. Bock, 549 U.S. 199, 216-17 (2007); *see* Ray v. Kertes, 285 F.3d 287, 295 (3d Cir.2002) (holding that failure to exhaust is an affirmative defense and finding that the district court erred in imposing an improperly heightened pleading standard that required the prisoner not only to plead, but also to prove, exhaustion in the complaint).  However, whether an inmate has exhausted administrative remedies is question of

law that is to be determined by the court, even if that determination requires the resolution of disputed facts. Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013) (holding that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury). While this normally entails an evidentiary hearing before the judge, the record before the Court in this case is more than sufficient to resolve the factual disputes at issue herein.

Recently, in Robinson v. Superintendent Rockview SCI, 831 F.3d 148 (3d Cir. 2016), the Third Circuit concluded that the institution in that case "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." Id. at 154. In Robinson, the plaintiff's grievance was properly signed and acknowledged by the grievance coordinator and was assigned a grievance number. Then, two months after the initial response was due, the plaintiff in Robinson sent the first of three separate requests for an update on the status of his grievance, all of which were ignored by the institution. Only after the third such request went unanswered did the plaintiff proceed with filing a lawsuit, nearly three months after the initial response to his grievance was due. Based on this egregious set of facts, the Third Circuit determined that the plaintiff's administrative remedies were rendered unavailable. Such is not the case here.

Plaintiff vehemently argues that he never received any response to his two grievances, or responses to his two inmate requests submitted to the Grievance Coordinator Carol Scire. What Plaintiff failed to inform the Court, however, is that he withdrew Grievance No. 636527 on August 12, 2016. (ECF No. 46-1, p.2.) Defendants provided the Court with the Grievance Withdrawal form for Grievance No. 636527 and on it appears Plaintiff's signature. (ECF No. 46-1, p.2.) Thus, the Court finds disingenuous Plaintiff's allegation about not receiving a

7

response to Grievance No. 636527. Similarly, the Court finds that Plaintiff's inmate requests to Carol Scire, which he attests to being authentic (ECF No. 48), were not actually submitted to Scire, but instead filled out and filed in this case in order to defeat the Defendants' Motion. Such conduct is deceitful and amounts to perjury, which is a criminal offense.

Additionally, the Court notes that Grievance No. 650480 was rejected by Carol Scire on October 31, 2016. (ECF No. 46-2, p.2.) The Grievance Rejection, which was submitted by Defendants, indicates that the grievance was rejected for two reasons: (1) it was not submitted within fifteen working days of the events upon which Plaintiff's claims were based; and (2) the issues presented in the grievance had already been reviewed and addressed in Plaintiff's previous grievance, Grievance No. 636527. (ECF No. 46-2, p.2.) While Plaintiff maintains that he filed Grievance No. 650480 because he never received a response to Grievance No. 636527, nowhere in the body of Grievance No. 650480 does Plaintiff mention that he never received a response to his previous grievance. Furthermore, his final statement in Grievance No. 650480, which is that he "will not sign off" (a phrase meaning that the inmate withdraws the grievance) no matter the response, indicates that Plaintiff did, in fact, withdraw his previous grievance, and indicates that he knew the disposition of his previous grievance before he filed Grievance No. 650480. This is additional proof that Plaintiff has not been honest with the Court.

The Court concludes that the evidence of record clearly supports the Defendants' argument that Plaintiff did not fully exhaust his administrative remedies. Therefore, their Motion for Summary Judgment will be granted. A separate Order will issue.

August 18, 2017

_____
Lisa Pupo Lenihan
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL WERNER, | ) |
| Plaintiff, | ) Civil Action No. 16 – 1863 |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| CHRISTINA SORBIN, *et al.* | ) |
| Defendants. | ) |

**ORDER**

**AND NOW**, this 18th day of August, 2017, for the reasons stated in this Court's Memorandum Opinion filed contemporaneously herewith,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies (ECF No. 18) is **GRANTED**.

**IT IS HEREBY ORDERED** that the Clerk is directed to enter judgment in favor of Defendants and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

cc: Daniel Werner
LG 1134
SCI Waymart
P.O. Box 256
Waymart, PA  18472-0256